In re LONG SHOT DRILLING, INC., also known as Newman Cable Construction, also known as Newman Companies, also known as Long Shot Boring, Inc., Debtor.

SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,

v.

LONG SHOT DRILLING, INC., and Official Unsecured Creditors' Committee,* Appellees.

BAP Nos. WO–98–007, WO–98–016.
Bankruptcy No. 96–10318.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 16, 1998.

* The Official Creditors' Committee of Long Shot Drilling, Inc., is an appellee in appeal number WO–98–016 only.

Robert A. Kumin, Robert A. Kumin, P.C., Oklahoma City, OK (Gary D. Hammond, Groom, Hammond & Harris, P.C., Oklahoma City, OK, with him on brief), for Appellant.

Heather L. Hintz (Melvin R. McVay, Jr. with her on brief), Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, OK, for Appellee.

Before McFEELEY, Chief Judge, PUSATERI and BOULDEN, Bankruptcy Judges.

## OPINION

BOULDEN, Bankruptcy Judge.

Before the Court are two consolidated appeals related to the confirmation of the Chapter 11 plan of Long Shot Drilling, Inc. One appeal is from an order confirming the plan of reorganization, and the second from an order granting a motion to modify the confirmed Chapter 11 plan. The appellant failed to obtain a stay pending appeal of either order, the Chapter 11 plan has been substantially consummated, and we are unable to provide effective relief without adversely affecting third parties who are not parties to these appeals. Applying the doctrine of equitable or prudential mootness, we therefore dismiss both appeals as moot.

## I. *Background*

Long Shot Drilling, Inc., also known as Newman Cable Construction, Newman Companies, and Long Shot Boring, Inc. (Debtor), is a company engaged in the technology of directional underground drilling associated· with laying fiber optic cable, road boring, and other trenchless technology services. The Debtor was owned by Pamela A. Newman (Newman) who was also the president, director, and CEO of the Debtor. Southwestern Bell Telephone Company (Telco) and the Debtor entered into a contract for directional drilling. The pipe used by the Debtor in the drilling project for Telco collapsed, and Telco made demand on the Debtor's insurance carrier, claiming damages for negligence. The Debtor's insurance carrier refused coverage and Telco asserted a claim for $328,000

against the Debtor, which the Debtor disputed.

The Debtor filed a petition under Chapter 11, and eventually filed a disclosure statement and Second Amended Plan of Reorganization (Plan). The Plan provided that the Reorganized Debtor would continue the Debtor's business, with Newman in her original corporate capacity until additional directors were elected. As the only Class 8 interest holder, Newman would retain her equity position in the Reorganized Debtor by contributing between $20,000 to $50,000 in cash and a building she owned valued at $25,000, to the Reorganized Debtor. The Plan classified claims into, among others, Class 5, consisting of unsecured trade creditors, and Class 6, which eventually consisted solely of Telco as the holder of an unsecured, disputed claim for which demand for payment had been made on the Debtor's insurance carrier. Class 5 creditors were to be paid 60% of the allowed amount of their claims over five years, plus interest. The Debtor was to execute unsecured full recourse promissory notes representing 100% of the total allowed unsecured claims, in favor of the trustee of a creditors' trust created by the Plan. Payments by the trustee on the Class 5 notes were to be made monthly. Telco, on the other hand, was required as a Class 6 creditor to proceed against the Debtor's insurance carriers and, if it was not satisfied therefrom, it would share in distributions under the Plan. However, if Telco participated under the Plan, it would not receive any distribution until claimants in Classes 1 through 5 received payments on their claims, and then Telco would be paid a ratable distribution not to exceed $50,000.

The Plan was confirmed over Telco's objection, and an Order Confirming Debtor's Second Amended Plan of Reorganization (Confirmation Order) was entered on January 14, 1998. Telco filed a timely notice of appeal from the Confirmation Order resulting in appeal number WO–98–007. On appeal, Telco asserts a variety of issues, but grouped

into related topics they are as follows: (1) the Plan did not disclose the employment and compensation of insiders as required by 11 U.S.C. § 1129(a)(5);[1] (2) the Plan violated § 1129(a)(7) because Telco would receive less than it would in liquidation; (3) the evidence failed to support a finding that the Plan was feasible in violation of § 1129(a)(11); (4) Telco's claim was improperly classified in violation of § 1122 because the Plan split similarly situated claims into two classes, and the improper classification resulted in a Plan that unfairly discriminated against Telco and was not fair or equitable in violation of § 1129(b); and (5) the Plan violated the absolute priority rule under § 1129(b)(2)(B)(ii). Telco sought and was denied a stay pending appeal of the Confirmation Order.

We are told that additional capital was needed by the Reorganized Debtor as a result of the adverse consequences of a drilling project that it conducted in Belize post-confirmation. Within one month of the entry of the Confirmation Order and prior to the Plan's effective date or substantial consummation, the Debtor filed a Motion to Modify Plan (Modification), to which Telco objected. The Modification provided that Class 8 interests in the Debtor would be canceled upon the Effective Date, and that on that date 100% of Newman's equity interest in the Reorganized Debtor would be sold to Tri-Power Drilling Inc., a subsidiary of TriPower Resources, Inc. (TriPower), for $50,000.[2] Upon purchase of Newman's stock, TriPower was to immediately take over operation of the Reorganized Debtor's business. The Modification also provided that TriPower would pay the costs of administration, make cash infusions into the Reorganized Debtor, and pay Associates Commercial Corporation, a secured creditor of the Debtor, in full upon entry of the Modification Order and assume its position.

The Bankruptcy Court approved the Modification over Telco's objection, but with the support of the Official Creditors' Committee of Long Shot Drilling, Inc., ruling that modi-

---

1. Unless otherwise stated, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2. The record is unclear whether Newman ever contributed the cash and building as provided in the Plan, but since the Modified Plan changed Class 8 treatment, we presume that she did not.

fication was permissible under § 1127(b) because the Plan had not been substantially consummated. The Bankruptcy Court also ruled that the Plan, as altered pursuant to the Modification (Modified Plan), properly classified claims pursuant to § 1122 and complied with § 1123, and that the Modification did not materially or adversely affect the treatment of classes of claims or payments under the Plan. The Bankruptcy Court entered an Order Approving Second Modification of Plan (Modification Order) on March 5, 1998.

Telco timely appealed the Modification Order, resulting in appeal number WO–98–016. Telco did not seek a stay of the Modification Order pending appeal. Telco argues on appeal that the Modification: (1) fails to disclose the identity and affiliation of the individuals who will serve as directors, officers, or voting trustees of the Debtor as required by § 1129(a)(5); (2) violates the absolute priority rule of § 1129(b)(2)(B)(ii); and (3) the "plan" does not disclose adequate information pursuant to § 1125.

This Court consolidated appeals numbered WO–98–007 and WO–98–016, and requested that the parties provide supplemental briefs on the issue of whether the consolidated appeals had become moot. We are informed[3] that the status of the reorganization is that TriPower in fact purchased Newman's equity position but paid the funds to the Reorganized Debtor rather than Newman. TriPower has assumed management of the Plan property and the Reorganized Debtor's operations. It has invested over $300,000 to fund the Reorganized Debtor's operations and payments to the unsecured creditors' trust required under the terms of the Modified Plan. It has also paid administrative expenses, and made payments to secured creditors, including $75,457 paid to Associates

Commercial Corporation. We are also informed that payment to Class 5 creditors has commenced in accordance with the terms of the Modified Plan.

## II. *Discussion*

■ With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed.R.Bankr.P. 8002. Both appeals were timely filed, and are from final orders. The parties have consented to this Court's jurisdiction in that they have not opted to have the appeal heard by the United States District Court for the Western District of Oklahoma. *Id.* at § 158(c); Fed. R.Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

■ In addition to determining whether an order is "final" as required under 28 U.S.C. § 158(a)(1), we have an obligation to determine the jurisdictional issue of whether the appeals are moot, including whether they are moot in the constitutional sense, *i.e.*, that there is no case or controversy. *See* U.S. Const., Art. III, § 2, cl. 1; *Yellow Cab Coop. Ass'n v. Metro Taxi, Inc. (In re Yellow Cab Coop. Ass'n)*, 132 F.3d 591, 594 (10th Cir. 1997); *New Mexico Env't Dep't v. Foulston (In re L.F. Jennings Oil Co.)*, 4 F.3d 887, 889 (10th Cir.1993), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1071, 137 L.Ed.2d 170 (1997) (court has an obligation to satisfy itself that it has jurisdiction to hear an appeal). " '[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59

3. The Reorganized Debtor submitted an affidavit of John Gibbs, the president of TriPower, setting forth the current status of the case. At oral argument before this Court, Telco objected to the affidavit. The objection is not well taken under the circumstances of this case. *See In re Manges*, 29 F.3d 1034, 1041 (5th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1105, 130 L.Ed.2d 1071 (1995) (citing *Board of License Comm'rs v. Pastore*, 469 U.S. 238, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985)). In *Pastore*, the Supreme Court stated

that if a post-appeal development occurs that affects the court's jurisdiction, the parties have a duty to bring the facts to the court's attention. *See also In re Buckner*, 218 B.R. 137, 144 n. 6 (10th Cir.BAP1998) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1069 n. 23, 137 L.Ed.2d 170 (1997) (quoting *Pastore*, 469 U.S. at 240, 105 S.Ct. 685)) (parties have a duty to bring facts to the attention of the appellate court that bear on the mootness issue).

L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). A controversy is no longer "live" if the reviewing court is incapable of rendering effective relief or restoring the parties to their original position. *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895); *see Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir.1994); *In re King Resources Co.*, 651 F.2d 1326, 1331–32 (10th Cir.1980) (if the only effect of reversal on appeal would be to order the impossible, we should not address the merits of the appeal). "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Osborn*, 24 F.3d at 1203 (quoting *Church of Scientology*, 506 U.S. at 12, 113 S.Ct. 447 (quoting *Mills*, 159 U.S. at 653, 16 S.Ct. 132)). If, however, there is a possibility of recovery to which an appellant might be entitled or some measure of effective relief that can be fashioned, then the appeal is not moot. *Golfland Entertainment Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.)*, 119 F.3d 852, 856 (10th Cir.1997) (citing *Osborn*, 24 F.3d at 1203; *In re Lloyd*, 37 F.3d 271 (7th Cir.1994)).

■ In considering whether these appeals are moot, we initially distinguish that line of cases dealing with §§ 363(m) and 364(e), the Bankruptcy Code's statutory mootness provisions.[4] Telco attempts to draw an analogy between § 363(m) cases and the appeals before this Court. However, § 363(m) does not apply in this case because the orders appealed do not involve the sale of the Debtor's assets. The only sale that took place in

relation to the Confirmation Order or the Modification Order was the sale of Newman's stock in the Debtor to TriPower. This was not a § 363 sale because Newman's stock was not an asset of the Debtor's estate. *See, e.g., In re Egbert Dev., LLC*, 219 B.R. 903 (10th Cir. BAP 1998) (§ 363(m) applies only to appeals involving transactions under § 363).

We therefore find cases discussing statutory mootness under § 363(m) not particularly helpful, except to the extent they illustrate the kinds of remedies that are sufficient to preclude an appeal from being moot. For example, in appeals of § 363 orders to which § 363(m) applies, appellate courts distinguish between determinations that might affect the validity of the transaction involved, and circumstances where the relief granted to an appellant does not effect the validity of the transaction. *See BCD Corp.*, 119 F.3d at 856 (where over $3 million was being held in a segregated money market account, appeal was not moot because there was the practical possibility of equitable relief in that state law provided for equitable remedies under principles of constructive trust); *Lloyd*, 37 F.3d at 271 (appeal from an order approving a sale to a good faith purchaser was not moot because the trustee held funds from the § 363 sale from which satisfaction of the debtor's claim that property was improperly sold could be satisfied, and the debtor's homestead exemptions applied to and followed the proceeds of the sale).

■ What Telco seeks from this Court is a ruling that these appeals are not moot in the constitutional sense discussed above, *see In re Continental Airlines*, 91 F.3d 553, 559 (3rd Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 610 (1997) (discussing examples of mootness in a constitu-

---

4. Section 363(m) states:

   The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

   11 U.S.C. § 363(m). Section 364(e) states:

   The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

   11 U.S.C. § 364(e).

tional sense), and also that they are not moot under the interpretation of mootness applied in Chapter 11 bankruptcy cases, sometimes referred to as "equitable mootness," or "prudential" or "pragmatic mootness." *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir.) (criticizing the term equitable mootness, but discussing the concept that reliance upon a substantially consummated plan of reorganization makes it imprudent to revise the plan), *cert. denied,* 513 U.S. 999, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994); *see Continental Airlines,* 91 F.3d at 559–560 (discussing the discretionary balancing of equitable and prudential factors in concerns unique to bankruptcy proceedings, rather than the limits on the federal courts' authority under Article III mootness). "The equitable component to the mootness doctrine is rooted in the 'court's discretion in matters of remedy and judicial administration' not to determine a case on its merits." *In re Public Serv. Co.,* 963 F.2d 469, 471 (1st Cir.) (quoting *In re AOV Indus., Inc.,* 792 F.2d 1140, 1147 (D.C.Cir.1986) (further quotation omitted)), *cert. denied,* 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). Under this doctrine, " '[a]n appeal should ... be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.' " *Continental Airlines,* 91 F.3d at 559 (alterations in original) (quoting *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.),* 988 F.2d 322, 325 (2d Cir.1993)); *In re Envirodyne Indus., Inc.,* 29 F.3d 301, 304 (7th Cir.1994) (stating that the doctrine of equitable mootness is merely that when formulating equitable relief, a court must consider the effects of the relief on innocent third parties). In bankruptcy cases, this component "centers on the important public policy favoring orderly reorganization and settlement of debtor estates by 'affording finality to the judgments of the bankruptcy court.' " *Public Serv.,* 963 F.2d at 471–72 (quoting *In re*

*Texaco, Inc.,* 92 B.R. 38, 45 (S.D.N.Y.1988)). Under the prudential or pragmatic branch of the equitable mootness doctrine, the court determines whether a confirmed plan that has been implemented may be modified or whether such a modification would " 'bear unduly on the innocent.' " *In re 203 N. LaSalle St. Partnership,* 126 F.3d 955, 961 (7th Cir.1997) (quoting *Envirodyne Indus.,* 29 F.3d at 304), *cert. granted,* ─── U.S. ───, 118 S.Ct. 1674, 140 L.Ed.2d 812 (1998). Thus, if the modification of a plan on appeal would upset legitimate expectations, or if "the requested relief would be either inequitable or impracticable in light of the change of circumstances," the appeal will be considered moot. *Public Serv.,* 963 F.2d at 473 (footnotes omitted) (citing cases).

■ In *Continental Airlines,* the court isolated five factors that may be considered when determining if equitable or prudential mootness is applicable. *Continental Airlines,* 91 F.3d at 560. These factors, which may be given "varying weight, depending on the particular circumstances" of any given case, include: (1) whether a plan has been substantially consummated; (2) whether a stay pending appeal has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the confirmed plan; and (5) the public policy of affording finality to bankruptcy court judgments. *Id.* A short examination of the issues raised by Telco on appeal in relation to these five factors reveals the problems that would be faced if we were to exercise jurisdiction and reverse the Bankruptcy Court's Confirmation Order or Modification Order.

■ The first of the five *Continental Airlines* factors is, as noted above, whether the confirmed plan has been "substantially consummated." If a confirmed plan has been "substantially consummated,"[5] as that term is defined in § 1101(2),[6] modification of the

**5.** Section 1127(b) provides that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan...." 11 U.S.C. § 1127(b).

**6.** Section 1101(2) provides that:
  (2) "substantial consummation" means—
    (A) transfer of all or substantially all of the property proposed by the plan to be transferred;

plan on appeal will often not be a remedy because it would unduly injure innocent third parties and upset the legitimate expectations of those involved in the implementation of the plan. *See, e.g., In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981) (court refused to hear appeal from confirmation order as transactions in reliance on the confirmed plan had proceeded which would be inequitable, as well as impracticable, to undo); *King Resources*, 651 F.2d at 1328 (the Tenth Circuit denied a motion to dismiss an appeal from a confirmation order as moot; it was not convinced that the plan had been substantially consummated and no injustice would result from consideration of the merits). Substantial consummation is a compelling factor, *Continental Airlines*, 91 F.3d at 560 (the "foremost consideration" is whether the plan has been substantially consummated), but does not automatically render an appeal moot. Courts have considered appeals from confirmation orders despite the substantial consummation of a plan where transactions could be reversed without injustice to third parties or those involved in the plan's implementation. *Public Serv.*, 963 F.2d at 473 n. 13 ("Of course, 'substantial consummation' *per se* is insufficient to moot an appeal from an order of confirmation, but it raises a 'strong presumption' that an appellate court will not be able to fashion an equitable and effective remedy.") (citations omitted); *accord Central States, Southeast & Southwest Areas Pension Fund v. Central Transp., Inc.*, 841 F.2d 92 (4th Cir.1988); *see, e.g., 203 N. LaSalle St. Partnership*, 126 F.3d at 961 (appeal of confirmation order was not moot despite the fact that investors had already put their capital into the reorganized debtor, the reorganized debtor had renegotiated a lease with one of its tenants and numerous other payments had been made, because creditor had agreed to return any payments received, to repay to the investors their investments plus interest, and many of the transactions could easily be reversed without significant harm to third parties);

*Envirodyne Indus.*, 29 F.3d at 304 (court considered the merits of an appeal from a confirmation order because pragmatic partial relief was available; the plan could be modified to reallocate $20 million worth of stock that noteholders had received to the appellants, though noteholders had already sold some of their stock, because they could be ordered to surrender some or all of the proceeds to the appellants).

■ In the present case, the Court's record indicates that the Modified Plan has been substantially consummated within the meaning of § 1101(2). Transfer of the property proposed by the Plan to be transferred has occurred, TriPower has assumed the management of the Reorganized Debtor's business and of all or substantially all of the property dealt with by the Plan, and distributions under the Plan have commenced. Thus, under the equitable mootness doctrine, there is a strong presumption that we should not entertain the merits of Telco's appeals, unless we could fashion a remedy that would not harm third parties. As discussed below, we cannot fashion a remedy without adversely affecting third parties not before this Court.

■ The second factor in the five-factor test is whether a stay pending appeal has been obtained. *See, e.g., Hicks, Muse & Co., Inc., v. Brandt (In re Healthco Int'l Inc.)*, 136 F.3d 45, 48 (1st Cir.1998) (implying that the failure to obtain a stay includes some element of culpability on the part of the appellant). But, at the outset it should be noted that the failure to obtain a stay pending appeal is insufficient on its own to warrant a determination that these appeals are moot. *See, e.g., Public Serv.*, 963 F.2d at 473 (mere failure to obtain a stay is not sufficient ground for a finding of mootness). Rather, in cases such as the present case, this factor is only tangential to the factors related to the substantial consummation of a plan and the affect on third parties, because "[a] stay not sought, and a stay sought and denied, lead

---

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

equally to the implementation of the plan of reorganization." *UNR Indus.*, 20 F.3d at 770, *quoted in Continental Airlines*, 91 F.3d at 562; *accord AOV Indus.*, 792 F.2d at 1144, 1146–47. In other words, the failure to obtain a stay pending appeal of a order confirming a plan of reorganization, regardless of whether the appellant has sought one, may bar appellate review because the lack of a stay permits the implementation of the plan which increases the likelihood that harm will result to third parties if the order appealed is reviewed on the merits. Telco sought a stay pending appeal of the Confirmation Order which was denied. It did not, for whatever reason, seek a stay of the Modification Order, and, as a result, the Plan has been implemented and substantially consummated.

To review the third factor of the *Continental Airlines* test, whether the relief requested would affect the rights of parties not before the court, we analyze Telco's issues on appeal both for their effect on the rights of third parties as well as to determine whether any practical relief is available. Such an analysis reveals that the relief Telco requests on review would affect the rights of parties not before this Court, therefore weighing against our consideration of the merits of these appeals. We note that although a discussion of the parties' arguments related to the merits of these appeals is necessary to illustrate why the appeals are moot, we are in no way commenting on the merits of the arguments.

Telco's first issue on appeal relates to the disclosure of Newman and other's compensation in the Plan, and of the identity and affiliation of the individuals who would serve as directors, officers, or voting trustees of the Reorganized Debtor in the Modification. Certainly, if we reversed we could remand this case to the Bankruptcy Court to order that the Disclosure Statement, the Plan, and the Modification be amended to provide more information. Yet, not only would it be unclear who would provide the information, but, more importantly, we are unable to determine what this would accomplish. The only

practical reason for such amendments, that we can conceive, would be to provide additional information so that creditors could revote upon the Plan and the Modification. Such revoting may totally unravel the Debtor's prospects for a successful reorganization.

Telco also argues on appeal that the Plan violates § 1129(a)(7) and (11) because it will receive less than it would in liquidation, and the evidence fails to support a finding that the Plan is feasible. Were this Court to reverse the Bankruptcy Court's ruling that elements of § 1129 had been met, our ruling would impact the validity of the now-consummated Plan and Modification Order. Even Telco stops short of asserting the logical extension of its arguments on appeal—that a finding that the Plan did not meet the requirements set forth in § 1129 may act to void the Confirmation Order and the Modification Order and actions taken pursuant thereto. Such a ruling would adversely affect TriPower because of the substantial sums it has already invested in the Reorganized Debtor in reliance on the Plan and Modification Order. It would also adversely affect creditors, both secured and unsecured, who have received payments pursuant to the terms of the Modification Order. Newman would also be adversely affected, having now sold her ownership interest in the Debtor. None of these entities are parties to these appeals.[7]

Telco contends that not only were claims improperly classified in the Plan, but that it was the subject of unfair discrimination and that the Plan is not fair and equitable. It suggests that this Court could declare the claims classification improper without disturbing the stock sale or the rights or expectations of innocent third parties by simply requiring Telco to be placed in Class 5 and receive its *pro rata* share of payments. However, payments have already commenced to general unsecured creditors in Class 5 by the creditors' trust in accordance with the Modified Plan. Telco does not request that a portion of those funds be retrieved from

---

7. The Official Creditors' Committee of Long Shot Drilling, Inc., is a party to the appeal of the Modification Order, but did not file a brief and, though it entered an appearance, was not heard at oral argument. We therefore do not know the extent to which it represents unsecured or secured creditors. Individual creditors, however, are not parties to these appeals.

those to whom they were disbursed, but rather that it simply be added to Class 5. It states that by adding it to Class 5, "the only difference will be the amount of distribution for each unsecured creditor." Telco's Memorandum of Law, July 24, 1998, p. 5. That, of course, is the point. Inserting Telco's $328,-000 claim would significantly impact the distribution to creditors in Class 5 that were to receive 60% of their allowed claims over five years. Had Telco been placed in Class 5 when voting occurred, Class 5 creditors may not have voted in favor of the Plan. Certainly, to adjust their return without allowing Class 5 to revote is unacceptable.

Telco asserts that it could be included within Class 5 without impacting the rights or expectations of creditors therein, because we could order that an independent examiner determine the nature and extent of certain preferential and fraudulent transfers, and that any recovery be paid to Class 5 claimants. Not only is it unclear whether this Court could enter such an order on appeal, Telco's proposed remedy is unrealistic. To bring the avoidance actions, an independent examiner must have standing. Yet, we have no record on which to judge who now owns such claims, nor do we know how an independent examiner would be compensated. Furthermore, we do not know how the composition of Class 5 would be altered as a result of the proposed avoidance actions, or whether sufficient funds would be generated to maintain the 60% return to Class 5. Based on these considerations alone, it is clear that such a ruling would create more mischief than it would solve.

Finally, Telco argues on appeal that the Confirmation Order and the Modification Order violate the absolute priority rule. Consideration of this issue would most certainly affect third parties not before this Court. We must remember that Newman apparently never contributed fresh capital in order to retain her equity position.[8] Instead, she sold her equity position to TriPower, and such sale was not a § 363 sale. Were we to remand this case to the Bankruptcy Court to

order TriPower to return the stock to Newman and to relinquish management of the Reorganized Debtor, we would be hard-pressed to know who would manage the Reorganized Debtor. We have no information that Newman is waiting to resume control of the Reorganized Debtor. We also have no way to order that money paid by TriPower to the Reorganized Debtor for administrative costs, distribution to Class 5 claimants through the creditors' trust, payment to secured creditors, as well as operating costs, be returned to TriPower. While TriPower may have assumed the position of the secured claimants it paid and would therefore retain the benefit of the payment, to require it to surrender its equity position without a return of the funds it expended is unfair. This case differs markedly from *203 N. LaSalle St. Partnership* where the appellant had made arrangements to unravel the effects of confirmation. Here, we have absolutely no information that any remedy we order would be effective, or could provide a benefit to Telco without injuring third parties. Since there has been a transfer of ownership and distribution, it is impracticable to grant effective relief without adversely affecting third parties not before this Court.

The fourth factor in the *Continental Airlines* test, whether the relief requested would affect the success of the Plan, also weighs heavily against this Court considering the merits of Telco's appeals. TriPower's cash infusion has paid certain prepetition creditors, has funded the payment of administrative claims, and has supported the operations of the Reorganized Debtor. We have no information as to the effect of removing that funding at this late date and placing the Debtor back into its pre-confirmed financial status. We can only assume that funding from some other source would still be needed for the Plan to succeed. We also have no information indicating that removal of TriPower as manager of the Reorganized Debtor's assets and operations would aid the success of the Plan.

---

8. From the record before us we presume that Newman did not contribute fresh capital as provided in the Plan. If she did, however, we have no information that the Reorganized Debtor could return the property to Newman were we to reverse on appeal.

The final factor of the *Continental Airlines* test, the public policy of affording finality to bankruptcy judgments, also weighs against our consideration of these appeals, for TriPower relied upon the finality of the unstayed Confirmation Order and the Modification Order when it invested considerable sums in the Reorganized Debtor and commenced management of the Reorganized Debtor. Telco, at oral argument, asserted that TriPower assumed the risk of investing in the Reorganized Debtor since it knew that the Confirmation Order had been appealed and that Telco would appeal the Modification Order. This argument implicitly shifts the burden from Telco, the party with the burden of obtaining a stay pending appeal, to Telco. The structure of Chapter 11 is designed to promote finality so that investors, such as TriPower, will aid in a debtor's reorganization. To consider the merits of Telco's appeals would "undermine the basis for the [i]nvestors' decision to proceed." *Continental Airlines*, 91 F.3d at 566.

The five factors in the *Continental Airlines* test overwhelmingly weigh in favor of declining review of the merits of Telco's appeals under the equitable or prudential mootness doctrine. We cannot afford effective relief to Telco without adversely affecting parties not before this Court. Thus, the appeals must be dismissed as moot.

### III. *Conclusion*

For the reasons set forth above, appeals numbered WO–98–007 and WO–98–016 are dismissed.