**In re MILK PALACE DAIRY, LLC, Debtor.**

**Metropolitan Life Insurance Company, Appellant,**

v.

**Milk Palace Dairy, LLC, Amarillo National Bank, Kit Carson State Bank, Hubbard Feeds, Inc., Caterpillar Financial Services Corp., Columbine Farms, LLC, Hughs Livestock, Inc., Jackie Hatcher, and Unsecured Creditors' Committee, Appellees.**

**BAP No. KS–04–079.**
**Bankruptcy No. 03–16743–11.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

July 22, 2005.

Martin W. Bauer of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., Wichita, Kansas, for Appellant.

W. Thomas Gilman of Redmond & Nazar, LLP, Wichita, Kansas, for Appellees Milk Palace Dairy, L.L.C., Amarillo National Bank and the Unsecured Creditors' Committee.

Before BOHANON, CORNISH, and BOULDEN,[1] Bankruptcy Judges.

## OPINION

BOULDEN, Bankruptcy Judge.

This appeal seeks reversal of an order granting Milk Palace Dairy LLC's (Debtor) rather unusual request to purchase real property and fixtures (Property) from a related entity, Hughs Livestock (Hughs). The Debtor was liable to appellant Metropolitan Life Insurance Co. (Met) for a mortgage that encumbered the Property although the related entity, and not the Debtor, owned the Property. The bankruptcy court approved the purchase reasoning that the Debtor's prospects for reorganization were enhanced by the acquisition of the Property that secured the debt for which it was already liable, and that Met was not harmed because the purchase was subject to all existing liens and encumbrances.

After the entry of the order allowing the purchase and Met's appeal thereof, the Debtor sold a portion of the Property under 11 U.S.C. § 363,[2] a creditor's plan of

---

**1.** Honorable Judith A. Boulden, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Utah, sitting by designation.

**2.** Future references are to Title 11, United

reorganization was confirmed, and the remaining Property was transferred to a liquidating trust that is not a party to this appeal. As a result of the unstayed events that occurred after the order that is the subject of this appeal,[3] we conclude that either we are unable to fashion an effective remedy for Met, or that it is inequitable to do so. Therefore, we DISMISS this appeal as moot.

## I. *Background*

The Debtor operated a dairy on two parcels of property. The first parcel, known as Milk Palace I, consisted of two tracts and was owned by the Debtor. The second parcel, known as Milk Palace II, consisted of sixteen tracts that the Debtor leased from Hughs. Hughs, a related entity, was owned in part by the Debtor's owners. The Debtor was obligated to Met on a First Mortgage Note in the original amount of $10,000,000, and the Debtor's and Hughs' land secured Met's mortgage when the Debtor filed its Chapter 11 petition in December 2003. Met's filed claim indicated it was owed $9,994,447.78 and that the collateral securing the claim was worth $13,000,000. The mortgage contained a "due on sale" clause that allowed Met to declare the entire indebtedness due and payable in the event that any portion of the real estate was sold, mortgaged, or conveyed.[4] As of the date of filing, the Debtor was not in default to Met, but subsequently defaulted when the first post-petition loan payment became due.

Met had attempted to foreclose against Hughs' portion of the collateral securing the mortgage in state court prior to the

filing of the Debtor's case. Because the foreclosure implicated the Debtor's rights under the lease with Hughs, the Debtor's Chapter 11 filing stayed the state court action and Met was delayed in exercising its foreclosure rights. During the course of the Debtor's Chapter 11 case, the Debtor sought several extensions of time to decide whether to assume or reject its lease with Hughs on Milk Palace II, but had not assumed the lease as of the date the order appealed from was entered.

The Debtor filed the "Debtor's Motion for Authority to Purchase Real Property, Fixtures and Equipment" (Purchase Motion) in which it sought permission from the bankruptcy court to purchase Milk Palace II from Hughs, subject to all claimed liens and encumbrances. The total purchase price was $140,000, although only $10,000 in cash was to be paid by the Debtor to Hughs. The transaction included an assumption of all indebtedness on the Property, even though the Debtor was already liable to Met. The Debtor's reason for filing the Purchase Motion was: 1) to acquire the Milk Palace II property upon which approximately one-half of the Debtor's facility was operated, and enough additional land for its waste management and water rights; and 2) to sell the land and equipment it did not need to operate the dairy and thus reduce the obligation owed to Met. The Purchase Motion represented that the Debtor was to retain only the property necessary for an effective reorganization.

Met objected to the Purchase Motion, asserting that the Debtor's lease with

---

States Code, unless otherwise noted.

**3.** The Court grants the Appellee's Motion to Correct Transcript of Oral Proceedings filed January 21, 2005, and the Appellant's Motion to Supplement Record on Appeal filed May 23, 2005.

**4.** A second clause, not raised as an issue in the pleadings below, was a "sale as a whole" clause that provided that the whole of the real estate must be sold together, and not in parcels, in the event of foreclosure.

Hughs had been rejected and therefore § 365 could not be used to prevent Met from enforcing its mortgage rights against Hughs in state court. Met argued that if the Debtor's obligation to Hughs under the lease had been cured and assumed, Met would have received a portion of those funds, we assume, from the payments the Debtor would have made to Hughs. Met further contended that Hughs' sale of the Property to the Debtor would violate its "due on sale" clause. Finally, Met complained that the proposed payment was not representative of the market value of the collateral and that the purchase should not be allowed outside confirmation of a plan.

## A. Purchase Order

After notice and a hearing, the bankruptcy court entered an order granting the Debtor's Purchase Motion (Purchase Order). The transcript of the hearing indicates that any factual disputes regarding whether the property was necessary for the Debtor's reorganization, or whether Met was substantially oversecured [5] were conceded; however, arguments were made over the legal effect of granting the Purchase Motion. Met argued that granting the Purchase Motion triggered the "due on sale" clause, causing Hughs' obligation to become due and payable.[6] However, the bankruptcy court opined that since it had no jurisdiction over Hughs, Met's enforcement of the "due on sale" clause against Hughs was not pivotal to its determination and did not preclude granting the Purchase Motion. The bankruptcy court's findings, made on the record at the conclusion of the hearing, stated that no party disputed that the Debtor had the funds necessary to purchase the Property ($10,-000), nor did any party assert that the expenditure of the funds for the purchase was going to impair the Debtor's operation. The bankruptcy court concluded that the fractured nature of the ownership of the Debtor, and the ownership of the assets the Debtor used, were the biggest impediment to reorganization. Further, the bankruptcy court determined that it did not have jurisdiction over Hughs or its property and that the bankruptcy court did not have the power to prevent Hughs from transferring property to the estate. The bankruptcy court concluded that the purchase did not prejudice Met's position because Met retained its lien priority and the purchase was subject to existing liens. The bankruptcy court ruled that under all circumstances Met's lien would continue to retain its lien priority even if the Debtor purchased the Property.[7] Met timely appealed the Purchase Order but did not

---

**5.** Met continues to argue that the valuation assigned by the bankruptcy court to Met's collateral in an opinion rendered some six months after the order that is the subject of this appeal is in error and has impacted its rights.

**6.** A dispute exists between Met and another creditor, Amarillo National Bank, over lien priority related to whether certain dairy equipment was a fixture or equipment, and related to certain irrigation equipment. Met also argued that granting the Purchase Motion would impair its lien priority in relation to the disputed equipment.

**7.** The bankruptcy court stated:

And without anybody standing here telling me that either the Debtor hasn't got the money or the Debtor's operation is somehow going to be impaired by the expenditure of the estate money, I think you may all be in the position of having asked for permission when you would have done better to ask for forgiveness. If you had done this without asking the Court I don't think there'd be anything that the Court could do about it, again so long as the transfer is subject to the liens. So I'm going to grant the motion. I find that there is no apparent prejudice to Metropolitan Life's position in this case by virtue of the transfer.
Appellant's Appendix at 409.

obtain a stay pending appeal. The Debtor, Amarillo National Bank (ANB), and the Unsecured Creditors' Committee (collectively "Appellees") oppose Met's position on appeal.

### B. Subsequent Proceedings

As anticipated in the Purchase Motion, the Debtor subsequently proceeded under § 363 to sell some of the Property at public auction. At the auction, some of the tracts were sold to third-party purchasers, and Met purchased some of the tracts through credit bids. All of the sales that occurred at the auction have closed, and the net proceeds from the sales have been transmitted to Met. Since the auction, Met has, in turn, conveyed some of the tracts it purchased by credit bid to third-party purchasers. The six remaining tracts, together with Milk Palace I, provided the physical basis of the dairy operation and were held by the Debtor until confirmation.

On May 25, 2005, the bankruptcy court confirmed ANB's Second Amended Plan of Reorganization. In accord with the plan, the Debtor conveyed all of its assets to the Milk Palace Liquidating Trust, dba Milk Palace Dairy (Trust).[8] Under the plan, the Trust is to operate the dairy and try to sell it. Included in the transfer of all assets to the Trust was the transfer by Special Warranty and Debtor–In–Possession Deed dated May 26, 2005, of the six remaining tracts from the Hughs purchase. Met has appealed the order of confirmation but has not obtained a stay pending appeal.

The Appellees have now filed a Motion to Dismiss Appeal on the Basis that the Appeal is Moot (Motion to Dismiss). Met argues, in opposition to the Motion to Dismiss, that the six tracts remain in possession of the Debtor[9] with only legal title to those tracts being transferred to the Trust. Further, Met asserts that since the Trust is under the jurisdiction of the bankruptcy court, this Court is capable of ordering the six tracts transferred back to Hughs. Alternatively, Met argues that this Court could modify the bankruptcy court's decision to allow Met a credit bid up to the fair market value of the collateral and modify its § 1111(b) allocation accordingly.

## II. *Discussion*

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, with the consent of the parties.[10] The parties have consented to this Court's jurisdiction in that they have not opted to have the appeal heard by the United States District Court for the District of Kansas.[11]

■ Before reaching the merits of an appeal, we must make an initial determination as to whether we have jurisdiction,[12] as well as decide the Appellees' Motion to Dismiss. Two concepts of mootness impact this determination. First, the Constitution authorizes federal courts to hear

---

**8.** We do not have ANB's Second Amended Chapter 11 Plan, only ANB's Original Chapter 11 Plan of Reorganization, but assume the provisions regarding the Trust are similar.

**9.** This is a curious assertion for Met to take, since ANB's Original Chapter 11 Plan of Reorganization clearly indicates that management of the dairy operation is to be conducted by the Trust post-confirmation.

**10.** 28 U.S.C. § 158(a), (b)(1), and (c)(1).

**11.** Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

**12.** *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

only "cases" or "controversies." [13] There is no case or controversy if some event has occurred post-appeal that makes it "impossible for the court to grant 'any effectual relief whatever,'" [14] and the appeal is moot. This is the concept of constitutional mootness. Second, if we can fashion effective relief for Met and this appeal passes the constitutional mootness test, we must still determine if ordering such relief would be equitable because this appeal arises in the context of a confirmed Chapter 11 case involving multiple parties. [15] This is the concept of "equitable" mootness. Equitable mootness deals with parties' reliance upon a substantially consummated plan of reorganization and the point at which modification of that plan would unduly impact innocent third parties. [16]

Met acknowledges its appeal is moot as it applies to that portion of the Property consisting of the ten tracts that have since been sold. However, Met asserts that we can fashion a remedy by returning to Hughs the portion of the Property consisting of the remaining six tracts that, together with Milk Palace I, have now been conveyed to the Trust for operation and eventual liquidation pursuant to ANB's Second Amended Plan of Reorganization. Alternatively, Met states that we can modify the bankruptcy court's decision to allow Met a credit bid up to the fair market value of the collateral, and by modifying Met's § 1111(b) allocation accordingly.

■ We disagree. Since the bankruptcy court entered the Purchase Order two independent events have occurred that make it difficult for this Court to grant effective relief to Met. First, all of the tracts that were subject to the Purchase Order have been sold or transferred. The six remaining tracts have been transferred to the Trust, an entity that is not a party to this appeal and not before this Court. This Court questions whether it could order the bankruptcy court to retrieve the assets from the Trust when the Trust has not presented its position to either the trial court or this Court. Second, ANB's Second Amended Plan of Reorganization has been submitted for consideration, voted on, confirmed by the bankruptcy court, and assets—including the six tracts of land at issue in this appeal—have been transferred into the Trust. Were this Court to grant Met's piecemeal relief of undoing the purchase of the six tracts, an unraveling of the underlying bankruptcy case would occur and innocent third parties would be affected: we question whether there is any practical possibility of effectual relief for Met under these circumstances. [17]

Assuming *arguendo* we found some reason to reverse on the merits and to void or alter the Purchase Order, a litany of un-

---

13. U.S. Const. Art. III, § 2, cl.1. *See In re BCD Corp.*, 119 F.3d 852, 856 (10th Cir.1997).

14. *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir.1994) (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)).

15. *In re Continental Airlines*, 91 F.3d 553, 559 (3rd Cir.1996) (discussing the concept of equitable mootness), *cert. denied*, 519 U.S. 1057, 117 S.Ct. 686, 136 L.Ed.2d 610 (1997).

16. *In re 203 N. LaSalle St. Partnership*, 126 F.3d 955, 961 (7th Cir.1997) (explaining that the appropriate inquiry in examining equitable mootness is the impact upon innocent parties), *rev'd on other grounds sub nom. Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 437, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

17. *Freightliner v. Central Refrigerated Service (In re Simon Transportation Services)*, Nos. 04–4058, 04–4066, 138 Fed.Appx. 52, 55–56, 2005 WL 1303492, at *3 (10th Cir. June 2, 2005) (unpublished) (discussing the practical

feasible, unknown, unacceptable, and inequitable results could occur. Some examples include the following. First, we have no way of knowing if Hughs could repay the Debtor the $10,000 cash paid for the Property, so how could the Debtor be made whole? Even if Hughs had the ability to repay the funds, the Debtor is no longer functional post-confirmation, so what would happen to the funds? Third, if we reversed the Purchase Order, the auction sales to third parties, including those tracts credit bid by Met and subsequently transferred, would probably also be vacated. To avoid this result and such an unacceptable impact on third parties, we could only reverse that portion of the Purchase Order that impacted the remaining six tracts of land. Such a ruling would, as argued by Met in a related context, possibly violate the "sale as a whole" clause contained in Met's mortgage. Fourth, Met would have to repay whatever has been credited on its mortgage, and although it probably could, it certainly has not indicated a willingness to do so. The potential of such unknown and unacceptable results compel this Court to consider the doctrine of equitable mootness.

▆▆ "An appeal should ... be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable."[18] This Court has previously reviewed equitable mootness in the context of an appeal from an unstayed Chapter 11 confirmation order,[19] and found various factors applicable when making an equitable mootness inquiry: (1) whether a stay has been obtained; (2) whether the plan has been substantially consummated; (3) whether the relief requested would affect the rights of parties not before the Court;[20] (4) whether the relief requested would affect the success of the confirmed plan;[21] and (5) the public policy of affording finality to bankruptcy court judgments.[22] All of these factors weigh against Met.

First, the parties agree that no stay of the Purchase Order was obtained, and that the confirmation order is also final. Transfer of all the Debtor's assets to the Trust would appear to result in consummation of the plan—thus the second prong weighs against Met. The third prong also weighs against Met because reversing the Purchase Order would affect the rights of purchasers of the ten tracts who are not parties to this appeal. Alternatively, were we to order the bankruptcy court to order the Trust to surrender the remaining six tracts it would, as stated above, implicate an entity not a party to this appeal. Tampering with the assets of the Trust would likewise impact third parties' reliance on the synergy of the combined assets of Milk Palace I and II in operating and marketing the assets of the Trust and, therefore, in

---

possibility of equitable relief in the context of an unstayed sale).

18. *Continental Airlines,* 91 F.3d at 559 (internal quotations and citations omitted).

19. *Southwestern Bell Telephone Co. v. Long Shot Drilling, Inc. (In re Long Shot Drilling, Inc.),* 224 B.R. 473 (10th Cir. BAP 1998) (discussing the issue of non-Section 364(e) and non-Section 363(m) equitable mootness at length).

20. *United States v. GWI PCS 1, Inc. (In re GWI PCS 1, Inc.),* 230 F.3d 788 (5th Cir.2000) (setting forth the three-prong test from the Fifth Circuit).

21. *First Union Real Estate Equity & Mortgage Investments v. Club Assocs. (In re Club Assocs.),* 956 F.2d 1065, 1069 (11th Cir.1992) (setting forth the Eleventh Circuit's similar four-prong test that adds whether the relief sought would affect the success of the reorganization).

22. *Continental Airlines,* 91 F.3d at 560 (setting forth the Third Circuit's similar five-prong test that adds the public policy prong).

how they voted on ANB's Second Amended Plan of Reorganization. The fourth prong also weighs against Met because the success of ANB's confirmed plan would likely be affected if we ordered the bankruptcy court to order the Trust to surrender the six tracts. The evidence is uncontroverted that the operating dairy needs the Property for its continued operation, and the value and marketability of the Trust assets would be impacted by returning the six tracts to Hughs. The final factor of the public policy of affording finality to bankruptcy court judgments also weighs against Met, for there are few orders more pivotal in the Chapter 11 process, and upon which the public should be able to rely, than a Chapter 11 confirmation order.

The alternative relief suggested by Met is even less appealing. Met states that we can modify the bankruptcy court's decision to allow Met a credit bid up to the fair market value of the collateral and modify Met's § 1111(b) allocation accordingly. We assume Met means a credit bid for an amount different from that fixed by the bankruptcy court after the Purchase Order, and to be bid at a sale post-confirmation.[23] But were we to do so, we would be interposing this Court not only into the valuation of assets of the estate but also into the confirmation process of ANB's Second Amended Plan of Reorganization: none of which is before us. In essence, by this relief Met seeks reversal of a variety of orders the bankruptcy court rendered subsequent to the Purchase Order. We have neither the record nor the jurisdiction to do so.

Upon consideration of the principles of both constitutional and equitable mootness, it appears that this Court is unable to fashion an effectual remedy for Met at this late date and with these parties. In addition, a fog of subsequent events has so obscured the impact on other parties of any remedy we may conjure, that we would be more fortune tellers than reviewing court were we to try to predict the impact of granting the relief Met requests. Therefore, we conclude that we either are unable to fashion an effective remedy, or that it is inequitable to do so, and this case is moot.

## III. *Conclusion*

The appeal is moot. The Appellees' Motion to Dismiss Appeal on the Basis that the Appeal is Moot is granted.

**23.** Met already credit bid at the auction in which the ten parcels were sold.