# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

00-6065EM

---

In re: Darick Patrice Williams,

      Debtor.

Darick Patrice Williams,

      Appellant

      v.

Citifinancial Mortgage Co., f/k/a
IMC Mortgage Co.,

      Appellee.

Appeal from the United States
Bankruptcy Court for the
Eastern District of Missouri

---

Submitted: November 8, 2000
Filed: January 8, 2001

---

Before KOGER, Chief Judge, DREHER and VENTERS,[1] Bankruptcy Judges

---

VENTERS, Bankruptcy Judge

      The Debtor, Darick Patrice Williams, appeals from the May 21, 2000, Order of the Bankruptcy Court denying the Debtor's Motion to Compel Turnover of Funds ("Motion"). Because we find that the Bankruptcy Court had jurisdiction to hear the Debtor's Motion, that abstention was not appropriate under

---

[1] The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

the circumstances, and that the doctrine of equitable mootness does not prevent us from granting the appropriate relief in the present appeal, the order below will be reversed.

The factual background of this case is set forth in detail in our prior opinion Williams v. IMC Mortgage Co. (In re Williams), 246 B.R. 591 (B.A.P. 8th Cir. 1999) ("Williams I"), and will be expanded upon below only to the extent necessary for the issues presently under consideration.

BACKGROUND

The Debtor filed a Chapter 13 bankruptcy case on October 15, 1998, in which he proposed to pay the arrearages on his residential mortgage over the course of a sixty-month Plan. The contractual monthly mortgage payments that came due postpetition were also to be paid through the Plan. Other than file a proof of claim, the mortgagee, Citifinancial Mortgage Co., f/k/a IMC Mortgage Co. ("IMC"), took no action during the pendency of the bankruptcy and did not request adequate protection payments at any time. On April 13, 1999, the Bankruptcy Court dismissed the Debtor's bankruptcy case as a result of the Debtor's failure to cure the Chapter 13 trustee's objections to confirmation. As of the date of dismissal, the trustee held $6,397.00 of the Debtor's money, which had not been distributed to any creditors. The dismissal order directed the trustee to pay claims "as allowed under section 503(b) ... and then he [the trustee] is to return any remaining funds to the debtor."

On June 7, 1999, IMC filed an application for administrative expenses in the amount of $5,889.00, representing $5,264.00 in postpetition mortgage payments collected by the trustee but never disbursed because the Plan had never been confirmed, and $625.00 in attorney's fees. After a brief hearing at which no evidence was offered, the Bankruptcy Court entered an order granting IMC's application for administrative expenses on July 22, 1999, and the trustee gave IMC a check for the full amount of its application the following day. The Debtor appealed the Bankruptcy Court's order to the Bankruptcy Appellate Panel for the Eighth Circuit on August 6, 1999, and we reversed. See Williams I. We held that IMC did not have an administrative claim for the postpetition mortgage payments and that, under the clear language of the Bankruptcy Code, the funds held by IMC were required to be returned to the debtor. Williams I, 246 B.R. at 596-97. Our decision in Williams I was entered on December 28, 1999.

While the Debtor's appeal was pending and in the absence of any stay pending appeal, IMC applied the funds received from the trustee against the balance still owed by the Debtor on the mortgage note and foreclosed on the Debtor's residence on November 12, 1999. Sometime after Williams I was

2

entered, the Debtor contacted IMC and requested that it return the funds received from the trustee. IMC refused. Instead, on February 4, 2000, IMC filed an action in the Circuit Court for the City of St. Louis requesting damages for breach of contract and unlawful detainer, and seeking a determination of the amount of the deficiency. In its petition to the Circuit Court, IMC requested set-off of the $5,889.00 received from the Chapter 13 trustee, labeling it as "Proceeds from the Bankruptcy Case;" no further explanation was given and IMC made no disclosure of the December 28, 1999, decision of the Bankruptcy Appellate Panel holding that those funds should be returned to the Debtor.

Shortly thereafter, on February 23, 2000, the Debtor filed a motion in the Bankruptcy Court seeking the turnover of the funds received by IMC from the trustee. IMC opposed the motion, and an initial hearing was held on March 28, 2000. Then, on April 11, 2000, a second hearing was held on the Motion and at that time the Bankruptcy Court announced orally that it was denying the Debtor's Motion. On May 31, 2000, the Bankruptcy Court entered a short, written order denying the Motion and incorporating the findings of fact and conclusions of law that the Court had announced from the bench on April 11, 2000.[2]

Meanwhile, on April 27, 2000, the Circuit Court for the City of St. Louis entered judgment in favor of IMC granting it a judgment for the mortgage deficiency, reduced by the amount of the set-off it had requested, namely the $5,889.00 received from the Chapter 13 trustee.

The Debtor now appeals the Bankruptcy Court's denial of his Motion to Compel Turnover of Funds.

ISSUES

The first issue on appeal is whether the Bankruptcy Court erred when it denied the Debtor's Motion on the basis that the bankruptcy court lacked jurisdiction. As an alternative basis for its denial of the Motion, the Bankruptcy Court also determined that it was appropriate to abstain. Thus, the second issue on appeal is whether the bankruptcy court erred when it abstained from hearing the Debtor's Motion. Finally, the third issue, which has been raised by the Appellee, is whether the instant appeal is moot under the doctrine of equitable mootness.

---

[2] The record is unclear was to why a second hearing was necessary on April 11 and why a written order was not entered until May 31.

3

## STANDARD OF REVIEW

In general, we review the findings of fact of the bankruptcy court for clear error and its legal determinations *de novo*. See O'Neal v. Southwest Missouri Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013.[3] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); accord Waugh v. Eldridge (In re Waugh), 95 F.3d 706, 711 (8th Cir. 1996); Chamberlain v. Kula (In re Kula ), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997).

In particular, the issue of whether the bankruptcy court properly dismissed the Debtor's Motion on the basis that the court lacked jurisdiction is a legal determination to be reviewed *de novo,* Edmonds v. St. Louis County, 222 F.3d 488, 492 (8th Cir. 2000); In re DeLorean Motor Co., 155 B.R. 521, 524 (B.A.P. 9th Cir. 1993), and the issue of whether the bankruptcy court properly abstained from hearing the Debtor's Motion is to be reviewed for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990); Parton v. White, 203 F.3d 552, 555 (8th Cir. 2000). A bankruptcy court also abuses its discretion if the reviewing court has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached based on all the appropriate factors. See Frederick County National Bank v. Lazerow, 139 B.R. 802, 804 (D. Md. 1992); In re Tong Seae (U.S.A.), Inc., 81 B.R. 593, 597 (B.A.P. 9th Cir. 1988). In its application, the abuse of discretion standard is indistinguishable from the clearly erroneous standard. Usery v. Usery (In re Usery), 242 B.R. 450, 457 (8th Cir. 1999 ) (citing Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 n.6 (B.A.P. 8th Cir. 1997)).

---

[3] Rule 8013 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, as follows: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

4

The Debtor's first argument is that the Bankruptcy Court erred when it determined that it was without jurisdiction to hear the Debtor's Motion. Specifically, he argues that the Motion to Compel Turnover was not, as the Bankruptcy Court determined, a non-core proceeding that would have no effect on the bankruptcy estate, but rather, it was a core proceeding, and as such, would clearly be within the jurisdiction of the Bankruptcy Court. We agree.

Reviewing the scope of bankruptcy court jurisdiction, we begin with the Congressional grant of jurisdiction in 28 U.S.C. § § 1334 and 157. Section 1334 confers jurisdiction on the district court to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Section 157 provides for the referral of those matters to the bankruptcy courts and sets up the well known framework of core and non-core, related proceedings.

Core proceedings consist of "any or all proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). The phrase "arising under" applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy. Specialty Mills, Inc. v. Citizens State Bank 51 F.3d 770, 773 (8th Cir. 1995). See also, Foley Co. v. Aetna Casualty & Surety Co. (In re S & M Constructors, Inc.), 144 B.R. 855, 859 (Bankr. W.D. Mo. 1992); 5 Lawrence P. King et al., Collier on Bankruptcy ¶ 3.01[4][c][i], at 3-20 (15th ed. rev. 2000). The phrase "arising in" generally refers to administrative matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed. In re Menk, 241 B.R. 896, 909 (B.A.P. 9th Cir. 1999). A nonexhaustive list of core proceedings is found in 28 U.S.C. § 157(b)(2).

Non-core, related proceedings are civil proceedings which do not invoke a substantive right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some "conceivable effect" on the administration of the debtor's estate. In re Dogpatch U.S.A., Inc., 810 F.2d 782, 786 (8th Cir. 1987 ) ("Dogpatch"); Specialty Mills, 51 F.3d at 773.

The instant appeal calls into question another aspect of the bankruptcy court's jurisdiction– that is, over what proceedings, if any, does a bankruptcy court have jurisdiction subsequent to the dismissal of the underlying bankruptcy case?

As a general rule, the dismissal of a bankruptcy case results in the dismissal of non-core, related proceedings, because the bankruptcy court's jurisdiction over the related proceeding depends on its nexus with the underlying bankruptcy case. Tim Wargo & Sons, Inc. v. Mankin Farms, Inc. (In re Tim Wargo & Sons, Inc.), 107 B.R. 626 (Bankr. E.D. Ark. 1989 ) (citing In re Smith, 866 F.2d 576, 580 (3rd Cir. 1989)). Although, the bankruptcy court may have the discretion to determine whether it is proper to exercise jurisdiction after the underlying case has been dismissed or closed. See Carraher v. Morgan Electronics, Inc. (In re Carraher), 971 F.2d 327 (9th Cir. 1992 ) (holding that bankruptcy court has discretion to retain jurisdiction over related case after dismissal of the underlying bankruptcy case); accord, In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992); In re Smith, 866 F.2d at 580.

On the other hand, there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case. See Post v. Ewing (In re Post), 119 B.R. 566, 567 (S.D. Ohio 1989); Davis v. Courington (In re Davis), 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995); In re Hardy, 209 B.R. 371, 373 (Bankr. E.D. Va. 1997). Core proceedings that arise after the case is dismissed or closed, however, do not fit neatly into the categories listed in 28 U.S.C. § 157(b)(2), inasmuch as most or all of those categories are premised on the existence of an underlying bankruptcy estate. Examples of core proceedings that arise after a bankruptcy case is dismissed or closed include: the enforcement of confirmation orders, In re Texaco Inc., 182 B.R. 937, 944 (Bankr. S.D. N.Y. 1995); an action based on post-bankruptcy discrimination, Hardy, 209 B.R. at 373; unresolved attorney's fees issues, Ewing, 119 B.R. at 567; and an action for damages based on a willful violation of the automatic stay, Davis, 177 B.R. at 911.

It is also well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders. See Menk, 241 B.R. at 896; Beneficial Trust Deeds v. Franklin (In re Franklin) 802 F.2d 324, 326 (9th Cir. 1986); Koehler v. Grant, 213 B.R. 567, 569 (B.A.P. 8th Cir. 1997); In re Commercial Fin. Servs., Inc., 247 B.R. 828, 844 (Bankr. N.D. Okla. 2000); In re Texaco, Inc., 182 B.R. at 944; In re Winebrenner, 170 B.R. 878, 881 (Bankr. E.D. Va. 1994). And, the enforcement of orders resulting from core proceedings are themselves considered core proceedings. See Mountain America Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 447 (10th

Cir. 1990) ("Civil contempt proceedings arising out of core matters are themselves core matters."); In re Franklin, 802 F.2d at 326 ("Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented."); In re Texaco Inc., 182 B.R. at 944 ("There can be no question that a proceeding ... to enforce and construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to a case under title 11.' ... [T]his is a core proceeding under section 157(b)(2).").

Although this appeal presents a slightly different issue, inasmuch as the Bankruptcy Court is not actually construing or enforcing its own orders, but enforcing the reversal of one of its orders, the principle is the same; the latter is merely a corollary of the first. Therefore, the Bankruptcy Court would have jurisdiction to hear the Debtor's Motion to Compel Turnover because it would be directly related to the "enforcement" of the reversal of the Bankruptcy Court's Order allowing IMC an administrative expense. It would also be considered a core proceeding since it follows directly from a core proceeding. See 11 U.S.C. § 503(b) and 28 U.S.C. § 157(b)(2)(B).

Basic principles of restitution and appellate procedure which dictate that a lower court always has the jurisdiction to order the restitution of an award overturned on appeal, even without a remand from the appellate court, also support our conclusion that the Bankruptcy Court had jurisdiction to rule on the Debtor's Motion. See Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust, 824 F.2d 765, 766-67 (9th Cir. 1987) (citing Baltimore & Ohio O.R. Co. v. U.S., 279 U.S. 781, 786, 49 S.Ct. 492, 493, 73 L.Ed. 954 (1929) (holding that the district court had jurisdiction to order restitution of award overturned on appeal, even in the absence of a remand from the appellate court). "The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done." Baltimore & Ohio R.R., 279 U.S. at 786. See also, Mohamed v. Kerr, 91 F.3d 1124, 1126 (8th Cir. 1996) ("It is a long-standing legal principle that '[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside...'") (quoting Restatement of Restitution § 74 (1937)).

Therefore, for the reasons stated above, we find that the Debtor's Motion constituted a core proceeding over which the Bankruptcy Court had jurisdiction. Accordingly, the Bankruptcy Court is reversed on the issue of jurisdiction.

## II.

As an alternative basis for its holding, the Bankruptcy Court determined that it was appropriate to abstain from ruling on the Debtor's Motion. The Debtor contends, however, that abstention was inappropriate in this case. We agree.

Based on our determination that the Debtor's Motion was a core proceeding,[4] and on the record below,[5] the Bankruptcy Court's decision to abstain will be analyzed as a permissive, or "discretionary," abstention under 28 U.S.C. § 1334(c)(1). Under that statute a court may abstain from hearing a proceeding whether the proceeding is core or non-core. Section 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. §1334(c)(1).

Because the statute provides only general standards for determining whether abstention is appropriate, *i.e.*, "in the interest of justice, or ... comity," courts have been guided by "well developed notions of judicial abstention," which include the premise that federal courts should exercise their

---

[4] By its terms, the mandatory abstention provision of 28 U.S.C. § 1334(c)(2) does not apply to core proceedings. The statute provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, <u>related to a case under title 11 but not arising under title 11 or arising in a case under title 11</u>, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

[5] The language used by the Bankruptcy Court to express its decision to abstain indicates that it was exercising permissive abstention. (Transcript of April 11, 2000, hearing before the Bankruptcy Court.)

jurisdiction if it is properly conferred and that abstention is the exception rather than the rule.[6]  Additionally, courts have developed a number of factors that may be considered in determining whether abstention is appropriate.  These include:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
> (2) the extent to which state law issues predominate over bankruptcy issues,
> (3) the difficult or unsettled nature of the applicable law,
> (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,
> (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,
> (7) the substance rather than the form of an asserted 'core' proceeding,
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,
> (9) the burden [on] the bankruptcy court's docket,
> (10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties,
> (11) the existence of a right to a jury trial, and
> (12) the presence in the proceeding of nondebtor parties.

In re Phelps Technologies, 238 B.R. 819, 821 (Bankr. W.D. Mo. 1999) (citing, *inter alia*,  Tarkio College v. Bower (In re Tarkio) 137 B.R. 34, 36 (W.D. Mo. 1992) (listing eight factors).  See also, In re Tuscan Estates, Inc. 912 F.2d 1162, 1166 (9th Cir. 1990); Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 6 F.3d at 1189 ("Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.").

Applying these factors, we conclude that abstention was not warranted in this case. Of particular relevance to our determination are: (1) the fact that the Motion was a core proceeding, and therefore, all of the factors pertaining to non-core proceedings are inapplicable; (2) the likelihood that IMC's commencement of the state court suit was an attempt to shop for a forum that would find some basis for

---

[6] See In re Phelps Technologies, 238 B.R. 819, 821 (Bankr. W.D. Mo. 1999) (citing Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 6 F.3d 1184, 1189 (7th Cir. 1993)).

IMC to retain funds that the Bankruptcy Appellate Panel of the Eighth Circuit had already determined should be returned; and, perhaps most importantly, (3) contrary to the protestations of IMC, there was, in fact, no state law issue to be decided, and therefore, there was no "interest of comity" favoring abstention. We elaborate.

In light of our decision in Williams I, the only basis IMC had for claiming that a set-off issue existed was that it had filed a state court action in which it raised set-off,[7] and that fact alone is insufficient to warrant abstention. For purposes of discretionary abstention in the interest of comity, a state law issue must have some modicum of validity, and in this case, it did not. At the time IMC filed its state court action and the Debtor filed his Motion, the Bankruptcy Appellate Panel for the Eighth Circuit had already determined, unequivocally, that IMC was not entitled to keep the funds it received from the trustee and that those funds were "required to be returned to the debtor." Williams I, 246 B.R. at 597. Therefore, any suggestion that IMC was entitled to keep those funds can only be viewed as an attempt to shop for an alternate forum that would allow IMC to keep those funds.[8]

Another factor that prohibits abstention in this case concerns the appellate mandate. IMC maintains that, in the absence of language specifically remanding the matter to the Bankruptcy Court or ordering the return of the funds, the mandate from Williams I did not require or allow the Bankruptcy Court to order the return of the money. This argument, however, fails to appreciate the scope of the appellate mandate.

When a case has been decided by an appellate court or panel, "every question decided by the appellate court, whether expressly or by implication, is finally settled and determined, thus creating a mandate for the lower court." In re Usery, 242 B.R. 450, 457 (B.A.P. 8th Cir. 1999)(citing Klein v. Arkoma Prod. Co., 73 F.3d 779, 784 (8th Cir. 1996)). If there are no explicit or implicit directions to hold further proceedings, a lower court has no authority to examine an issue settled by the higher court. Bethea

---

[7] We note that the set-off issue was only raised in the state law action to the extent that IMC included the $5,889.00 as "Proceeds from Bankruptcy Case," in its explanation of how the deficiency was calculated in its state court petition. (Appellee's Appendix, p. 3)

[8] To hold otherwise would be, in effect, saying that someone who found a watch belonging to another can keep that watch if the watch's true owner owed the finder some money. And that result would be both unlawful and absurd.

v. Levi Strauss and Co., 916 F.2d 453, 456 (8th Cir. 1990).  The lower court does have the authority, however, to address issues left open by the appellate mandate, Delgrosso v. Spang and Company, 903 F.2d 234, 240 (3rd Cir. 1990), and the lower court's actions should not be inconsistent with either the letter or spirit of the mandate.  Quern v. Jordan, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979).

In this case, not only was the Bankruptcy Court free to order IMC to return the Debtor's money, since that would be consistent with the mandate of Williams I, it was incumbent on the Bankruptcy Court to grant the relief requested in the Debtor's Motion.  Abstaining from doing so violated both the letter and spirit of the Bankruptcy Appellate Panel's mandate.

Therefore, for the reasons stated above, we find that abstention was not appropriate and reverse the Bankruptcy Court on this issue.

III.

Finally, we address IMC's contention that the instant appeal is equitably moot.  For the following reasons, we determine that it is not.

Fundamentally, mootness is a constitutionally imposed limit on the jurisdiction of federal courts; a federal court may only exercise its jurisdiction over cases or controversies.  U.S. Const., Art. III, § 2, cl. 1.  " '[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' "  County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979 ) (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)).  A case is no longer "live" if the reviewing court is incapable of rendering effective relief or restoring the parties to their original position. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895).  When circumstances change while an appeal is pending that make it impossible for the court to grant "any effectual relief whatsoever" to a prevailing party, the appeal must be dismissed as moot.  Church of Scientology of California v. U.S., 506 U.S. 9, 12-13, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992).  If, however, there is a possibility of recovery to which an appellant might be entitled or some measure of effective relief that can be fashioned, then the appeal is not moot.  Golfland Entertainment Ctrs., Inc. v. Peak Inv., Inc. (In re BCD Corp.), 119 F.3d 852, 856 (10th Cir.1997).

11

Another variation of mootness, referred to as "statutory mootness," occurs when a statute, such as 11 U.S.C. § 363(m) or § 364(e), limits the relief an appellate court can dispense based on the occurrence of certain events while the appeal is pending and in the absence of a stay pending appeal. See e.g., 11 U.S.C. § 363(m) and 364(e).[9]

Finally, there is equitable mootness. Also called "prudential" or "pragmatic" mootness,[10] it is a doctrine developed by appellate courts reviewing bankruptcy cases which allows an appellate court to dismiss a case as moot, based on equitable grounds, even though effective relief could conceivably be fashioned. Blackwell v. Little (In re Little), 253 B.R. 427, 430 (B.A.P. 8th Cir. 2000). See also, In the Matter of UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994) (criticizing the term equitable mootness, but recognizing that an appeal may be moot where it is imprudent to grant relief) cert. denied, 513 U.S. 999 (1994). In essence, the appellate court "inquires whether an unwarranted or repeated failure to request a stay enabled developments to evolve in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible." Hicks, Muse & Co., Inc. v. Brandt (In re HealthCo International Inc.), 136 F.3d 45, 48 (1st Cir. 1998).

The doctrine of equitable mootness is most often applied in the context of a reorganization bankruptcy where the bankruptcy court has confirmed a plan, the plan has been substantially consummated,

---

[9] Section 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 364(e) states:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

[10] Southwestern Bell Telephone Co. v. Long Shot Drilling, Inc. (In re Long Shot Drilling, Inc.), 224 B.R. 473, 479 (B.A.P. 10th Cir. 1998).

and then a party seeks appellate review of an issue that, if upset, would unduly disturb the plan.[11] See e.g., In re Long Shot Drilling, Inc., 224 B.R. at 478-79 (finding creditor's appeal of order confirming plan equitably moot where creditor had not obtained stay pending appeal, plan had already been substantially consummated, and appellate relief would have adversely affected parties not before the court.); In the Matter of: UNR Indus., Inc., 20 F.3d at 769 ("We ask not whether this case is moot, 'equitably' or otherwise, but whether it is prudent to upset the plan of reorganization at this late date."). Although, there is some suggestion that the equitable mootness doctrine may apply whenever there is a change in circumstance that renders it inequitable for an appellate court to grant the relief sought by the appellant. See e.g., In re HealthCo International Inc., 136 F.3d 45 at 48-49 (considering equitable mootness in belated challenge to a settlement approved by the court in a Chapter 7 bankruptcy).

In this instance, we need not decide whether the doctrine of equitable mootness applies when there is no plan of reorganization to disturb, because the instant appeal cannot be considered equitably moot under any circumstance. If equitable mootness is indeed a doctrine limited to preventing the imprudent upset of a substantially consummated plan of reorganization, as it has been in most of the cases, the doctrine would not apply, because this case presents an inapposite factual context. The Chapter 13 case was dismissed prior to the confirmation of a plan; therefore, an appeal, whatever the substance, cannot disturb "the plan," cannot impede the success of implementing the plan, and cannot adversely affect third parties who have relied on the plan and are not before the court at this time. If we view the doctrine broadly, applying it to all appeals in which there has been a "comprehensive change of circumstances"[12] that makes granting the relief requested by the appellant inequitable, the instant appeal falls far short of warranting the equitable mootness doctrine's application.

As stated above, the doctrine of equitable mootness focuses on equitable or prudential concerns rather than the impossibility of granting relief. In re Roberts Farms, Inc., 652 F.2d at 798. Therefore, one

---

[11] Factors considered by courts to determine whether an appeal is equitably moot in the context of a reorganization bankruptcy include: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments. See In re Continental Airlines, 91 F.3d 553, 560 (3rd Cir. 1996) (citing, inter alia, Manges v. Seattle-First Nat'l Bank (In re Manges), 29 F.3d 1034, 1038-39 (5th Cir. 1994)) cert. denied 513 U.S. 1152 (1995).

[12] In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir. 1981).

13

of the first questions that must be asked before any equitable doctrine can be applied is "whether he who seeks equity has done equity." Smith v. World Insurance Co., 38 F.3d 1456, 1462 (8th Cir. 1994 ) (citing Prow v. Medtronic, Inc., 770 F.2d 117, 122 (8th Cir. 1985)). This is part of the doctrine of "unclean hands," Id. at 121, and in this case, we believe that the Appellee, IMC, has failed to "do equity," or in other words, has unclean hands. In support of our finding that IMC has failed to do equity, we cite IMC's "interpretation" and subsequent, utter disregard of our decision in Williams I.

In Williams I, we stated:

> Under the Bankruptcy Code, the funds are required to be returned to the debtor, and the debtor may then pay those funds over to his mortgagee.... Section 1326 ... establishes a clear and explicit command to the trustee that, upon dismissal, if there is no confirmed plan funds will be returned to the debtor less any unpaid claims allowed under § 503.... [Because IMC's claim was not] an actual, necessary cost or expense of preserving the estate after the commencement of the case, the bankruptcy court erred in allowing this application for administrative expenses.

Williams I, 246 B.R. at 597. Thus, IMC knew that it was not entitled to the Debtor's money. Notwithstanding, IMC argued to the Bankruptcy Court and continues to argue in this appeal that it was free to retain the money in the absence of a separate judgment.[13] Moreover, it filed a state court action claiming an entitlement to those funds when it had clearly been told by a federal court that it was not entitled to them.

IMC's actions can be viewed in this instance as nothing more than disingenuous and duplicitous. They are disingenuous because they represent a position that was obviously contrary to the express intent of the Bankruptcy Appellate Panel, set forth in Williams I, regardless of their technical possibility. And, the duplicity of IMC's actions was belied by IMC's comments in oral argument before us when it stated that it would have repaid the money if the debtor had taken some action to get it back. The truth, however, was that when the Debtor took action to recover its money, i.e., filed a motion for turnover, IMC contested

---

[13] In retrospect, an explicit direction to IMC to turn over the funds or to the Bankruptcy Court to effectuate that turnover might have been appropriate– appropriate, perhaps, but unnecessary. It was unnecessary because, as we have discussed above, the mandate of the Bankruptcy Appellate Panel was clear.

14

that action and continues to contest it now in this appeal. Therefore, we find that IMC is not entitled to any equitable relief based on the fact that it has failed to act equitably.

Even if we were to address the merits of IMC's equitable mootness argument, it would fail because no inequity will result if the Debtor's money is returned. IMC argues that returning the money to the Debtor at this point would create a windfall for the Debtor because the state court's determination of the deficiency included the funds received by IMC from the Chapter 13, the Debtor has since filed for protection under Chapter 7 of the Bankruptcy Code and the Chapter 7 trustee has abandoned his interest in the outcome of this appeal. We reject this argument.

First of all, IMC has no one to blame but itself for including the funds received from the Chapter 13 trustee in its petition for a determination of the deficiency. IMC knew that it was not entitled to those funds at the time Williams I was issued and therefore should not be surprised that it will have to part with those funds now. Second, the Debtor's ability to keep the funds at this point may have been caused, in part, by IMC's reluctance to abide by our decision in Williams I. If IMC had turned over the funds immediately, and the Debtor had filed for Chapter 7 bankruptcy at that point, the funds would have become part of the bankruptcy estate, subject only to the exemptions claimed by the Debtor. Third, and perhaps most importantly, the Debtor's receipt of the $5,889.00 at this point is the result of the legitimate use of the Bankruptcy Code and bankruptcy process; there has been no allegation that the Debtor has engaged in any dishonest or bad faith conduct, nor do we think that he has.

Therefore, based on the reasons stated above we find that the doctrine of equitable mootness is inapplicable to this appeal.

CONCLUSION

Because we conclude that the bankruptcy court had jurisdiction to hear the Debtor's Motion, that abstention was not appropriate in these circumstances, and that the doctrine of equitable mootness does not prevent us from granting the appropriate relief, the Bankruptcy Court's judgment entered on May 21, 2000, is reversed and IMC is hereby ordered to pay the Debtor $5,889.00 within 20 days of the entry of this decision.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.