# United States Bankruptcy Appellate Panel
**FOR THE EIGHTH CIRCUIT**

_____

06-6024MN

_____

| | |
|---|---|
| In re: | * |
| | * |
| Refco, Inc., et al | * |
| | * |
| Debtors. | * |
| | * |
| _____ | * |
| | * |
| Cargill, Incorporated, | *  Appeal from the United States |
| | *  Bankruptcy Court for the |
| | *  District of Minnesota |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Man Financial, Inc. | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted:  September 13, 2006
Filed: October 19, 2006

_____

FEDERMAN, MAHONEY, and MCDONALD, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge

This is an appeal of Man Financial, Inc. ("Man") from the final order of the
United States Bankruptcy Court for the District of Minnesota entered on March 15,
2006, remanding this removed action to the District Court of the State of Minnesota

for Hennepin County (the "State Court"). We reverse and remand, with instructions to transfer this action to the United States Bankruptcy Court for the Southern District of New York.

FACTUAL BACKGROUND

Cargill, Incorporated ("Cargill"), filed suit in Minnesota State Court on January 4, 2006 (the "Minnesota Lawsuit"). On January 13, 2006, Man removed the Minnesota Lawsuit to the United States Bankruptcy Court for the District of Minnesota based on subject matter jurisdiction under 28 U.S.C. § 1334.

Thereafter, Man moved to transfer the Minnesota Lawsuit to the United States Bankruptcy Court for the Southern District of New York (the "New York Bankruptcy Court"), where related proceedings, *In re Refco, Inc., et al*[1] (the "Bankruptcy Cases"), are pending.

On February 15, 2006, thirty-three days after Man filed its notice of removal, Cargill filed a motion to remand the Minnesota Lawsuit to the State Court, along with an objection to Man's transfer motion. On March 15, 2006, the Minnesota Bankruptcy Court granted Cargill's motion to remand, holding that the Minnesota Lawsuit was subject to mandatory abstention under 28 U.S.C. § 1334(c)(2). That same day, Man filed its notice of appeal to this Court.

Since the Minnesota Lawsuit is intertwined with the pending Bankruptcy Cases of Refco, Inc. and its affiliates (collectively, the "Debtors") in New York, certain undisputed facts of the Bankruptcy Cases are set forth as background.

Prior to the Refco bankruptcy, the Debtors were engaged in the commodities futures and options clearing business. On August 31, 2005, Cargill and its subsidiaries

---

[1] No. 05-60006 (Bankr. S.D. N.Y. filed Oct. 17, 2005).

sold certain assets, and shares of stock, to one of the Refco affiliates, Refco Group Ltd., LLC, pursuant to a Purchase and Sale Agreement for $208,600,000. In addition to that price, Refco owes a post-closing payment to Cargill, which is due approximately August 31, 2007. The amount of that payment is to range from $67,000,000 to $192,000,000, depending upon the performance of the business purchased by Refco from Cargill. At the same time they entered the Purchase and Sale Agreement, Cargill and Refco entered into an Exclusivity Agreement under which Cargill and its affiliates bound themselves to use the Debtors' services for all of Cargill's commodities futures clearance business over a five-year period.

On October 17, 2005, the Debtors commenced their Bankruptcy Cases in New York. By order dated November 14, 2005 (the "Man Sale Order"), the New York Bankruptcy Court authorized the Debtors, *inter alia,* to sell their domestic regulated futures commission merchant business, Refco LLC, to Man pursuant to an Acquisition Agreement dated as of November 13, 2005. By order dated November 25, 2005 (the "Refco LLC Sale Order"), the New York Bankruptcy Court authorized the chapter 7 trustee of Refco LLC to consummate that transaction. Man contends that the Acquisition Agreement and Refco LLC Sale Order required assignment and transfer to Man of all Refco LLC customer accounts, including Cargill's, and all rights under the Exclusivity Agreement.

On December 9, 2005, Cargill objected to the assignment of the Exclusivity Agreement. Essentially, Cargill contended that, as part of the assignment, Man should be obligated to assume Refco's obligation to make the post-closing payment owed by Refco, which is due on August 31, 2007. The Debtors and Man both filed oppositions to Cargill's objection.

Before the New York Bankruptcy Court had the opportunity to rule on Cargill's objections to the assignment of the Exclusivity Agreement, Cargill instructed Man to transfer all of Cargill's accounts then held at Man to a third-party futures commission

3

merchant, J.P. Morgan Futures, Inc. ("J.P. Morgan"). Although these accounts were subject to the Exclusivity Agreement, Cargill asserted that the Exclusivity Agreement could be enforced neither by Refco (because Cargill's accounts were no longer at Refco) nor by Man (because Cargill had objected to the assignment of the Exclusivity Agreement).

Thereafter, Man advised Cargill that, if Cargill insisted on transferring its accounts to J.P. Morgan, Man would cooperate for regulatory reasons, but would also exercise what it claims to be its right – under the Refco customer agreement – to withhold and place in a segregated cash collateral account some $66 million (the "Cash Collateral") as security for the damages allegedly caused by Cargill's breaches of the Exclusivity Agreement. Cargill thereafter directed Man to move the accounts. Accordingly, acting under a full reservation of rights, Man effected the demanded transfer, and placed the Cash Collateral in a segregated account invested at Cargill's direction.

On January 4, 2006, Cargill commenced the Minnesota Lawsuit. The gravamen of its Complaint is that Man "is not a party to," "has not been assigned any rights pursuant to," and "has no rights under" the Exclusivity Agreement.[2] On that basis, the Minnesota Lawsuit asserts that Man is not entitled to enforce the Exclusivity Agreement, and hence cannot legally withhold the Cash Collateral.

On January 31, 2006, the New York Bankruptcy Court ruled that the Exclusivity Agreement is a non-executory contract validly assigned to Man as of November 25, 2005. The upshot of this ruling is that, while Man has succeeded to Refco's rights under the Exclusivity Agreement, it did not assume Refco's obligations to Cargill under the Purchase and Sale Agreement. Cargill has appealed that ruling to the United States District Court for the Southern District of New York. Cargill's

---

[2] *See* Appellant's App. 11-19 (Compl. ¶¶ 1, 4, 30, 35, 38, 42-46).

appeal deals specifically with the question of "[w]hether, as a result of the Bankruptcy Court's rulings, the Exclusivity Agreement is enforceable by Man Financial as a valid and binding standalone contract."[3] Man contends on this appeal that the Minnesota Lawsuit is an attempt to obtain a second ruling on that same issue.

STANDARD OF REVIEW

We review the legal conclusions of the bankruptcy court *de novo.*[4]

DISCUSSION

1. Jurisdiction

Cargill argues that we have no jurisdiction to hear this appeal, because Man did not seek a stay pending appeal of the Minnesota Bankruptcy Court's remand order. We disagree.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 158(a)(1) and 158(c)(1), which vest the Bankruptcy Appellate Panel with jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. Under 28 U.S.C. §§ 1334(d) and 1452(b), decisions to abstain or remand are not subject to review "by appeal or otherwise" by "the court of appeals" or by "the Supreme Court of the United States," but appellate review by this Court is fully permitted. Indeed, the legislative history of those provisions makes it plain that Congress considered appellate review

---

[3] *See* Cargill Opening Brief at 3, *Cargill, Inc. v. Refco, Inc., Man Financial Inc., Official Committee of Unsecured Creditors,* (S.D. N.Y. 2006) (No. 1:06-CV-02133-KMK); Record at 5 (filed April 21, 2006).

[4]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

at the district court level to be constitutionally required in order to permit the bankruptcy court to enter a final remand or abstention order.[5]

No provision of section 1334(d) or section 1452(b) conditions this Court's exercise of appellate jurisdiction upon the grant of a stay pending appeal. Nor do the cases cited by Cargill support that proposition. In *Rivera Perez v. Massachusetts General Hospital*,[6] the defendant in a non-bankruptcy case sought a stay pending appellate review by the court of appeals of a district court's remand order. The district court denied the application on the basis that its prior execution of the remand order divested it of the authority to enter a stay pending appeal.[7] Although the court did not explain why the execution of the remand order divested it of such authority, the reasons for that conclusion are apparent from the statute. First, 28 U.S.C. § 1447(d) – unlike sections 1334(d) and 1452(b) – precludes review of a remand order "by appeal or otherwise,"[8] and thus prevents a district court from reviewing its own remand order.[9] Second, because the district court's remand order had been fully executed, jurisdiction had re-vested in the state court prior to the time the stay

---

[5] *See* Judicial Improvements Act of 1990, Pub. L. No. 101-750 § 309(c), 104 Stat. 5089, 5113 (1990); 136 Cong. Rec. 17570, 17580 (1990) (appellate review of remand orders required because "bankruptcy judges may enter trial orders only if there is appellate review in an Article III court"). We note that, with the consent of all parties, the Bankruptcy Appellate Panel has jurisdiction over any matter appealable to the district court. 28 U.S.C. § 158(c)(1).

[6] 193 F.R.D. 43 (D. P.R. 2000).

[7] *Id.* at 45.

[8] 28 U.S.C. § 1447(d).

[9] *See, e.g., In re La Providencia Dev. Corp.,* 406 F.2d 251, 252-53 (1st Cir. 1969) ("[T]here is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed [by section 1447(d)].").

application was made.[10] Similarly, in *Arnold v. Garlock*,[11] the Fifth Circuit lacked any jurisdiction to hear an appeal from the remand orders of the district courts because it was a court of appeals.[12]

Here, by contrast, there is a statutory right of appeal to this Court. Neither *Rivera Perez* nor *Garlock* holds that obtaining a stay pending appeal is a prerequisite to the entitlement to appellate review by a district court or bankruptcy appellate panel. Indeed, any such requirement would clash directly with Congress' express preservation of that appellate right in 28 U.S.C. §§ 1334(d) and 1452(b).

2. Timeliness of the Motion to Remand

The motion to remand was filed thirty-three days after the case was removed to the Minnesota Bankruptcy Court. There are two possible bases for removal to the Bankruptcy Court, the general removal statute[13] and the removal statute specifically referencing bankruptcy proceedings.[14] Section 1447 provides that "a motion to remand a case on the basis of any defect other than lack of subject matter jurisdiction must be made in 30 days after the filing of the Notice of Removal under § 1446(a)." The bankruptcy removal statute, by contrast, provides that a case may be remanded "on

---

[10] *See* 28 U.S.C. § 1447(c) ("A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." (emphasis added)); *accord Fed. Deposit Ins. Corp. v. Santiago Plaza,* 598 F.2d 634, 636 (1st Cir. 1979).

[11] 278 F.3d 426, 438 (5th Cir. 2001).

[12] *See* 28 U.S.C. §§ 1334(d) and 1452(b) (no statutory right of appeal to "court of appeal").

[13] 28 U.S.C. §§ 1441 and 1447.

[14] 28 U.S.C. § 1452.

any equitable grounds," without specifying a time limit. Federal Rule of Bankruptcy Procedure 9027, which implements § 1452, provides generally that a case must be removed by the longer of ninety days after the order for relief in the case, or, if the automatic stay is applicable, thirty days after entry of an order terminating the stay.[15] Significantly, neither § 1452 nor Rule 9027 contains any time limitation for the filing of a motion to remand.

Man relies on the Supreme Court's decision in *Things Remembered, Inc. v. Petrarca*[16] to argue that the strict time limits in § 1447 are applicable to causes of action removed to the bankruptcy court. The bankruptcy court here held that *Things Remembered* did not so determine, and that the time limits applicable to removal of other civil actions to the district court are not applicable in bankruptcy cases. We agree.

In *Things Remembered,* the creditor's removal of its state court case to bankruptcy court was late under both §§ 1452 and 1441. The only issue before the Supreme Court was whether the decision of the district court so holding was appealable to the court of appeals. Section 1447(d), applicable to general removal to district court, provides that an order remanding a case to the state court from which it was removed is not reviewable on appeal or otherwise. Section 1452(b) provides that an order under that section remanding a claim or cause of action, or not remanding it, is not reviewable by appeal by the court of appeals or by the Supreme Court. Therefore, the Sixth Circuit had held, and the Supreme Court agreed, that regardless of whether the case had been removed under § 1441 or § 1452, the decision of the district court to remand the case was not reviewable by the court of appeals. While the Supreme Court did note that the motion to remand had been filed within the thirty day time limit imposed by § 1447, it did not hold that a later motion would have been time-barred.

---

[15] Fed. R. Bankr. P. 9027.

[16] 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995).

While the holding in *Things Remembered* does not deal with whether the § 1447 time requirements are applicable in bankruptcy proceedings, the Court there did state that "Congress, when it added § 1452 to the Judicial Code chapter on removal of cases from state courts – a chapter now comprising 28 U.S.C. §§ 1441-1452 – meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases."[17] We hold that the motion to remand was timely because the remand procedure prescribed by § 1447, which includes the 30-day time limit, does not preempt the different remand procedure that applies to § 1452(b), which permits remand on "any equitable ground" without mentioning a time limit.[18] To require strict adherence to a strict deadline would not be consistent with the liberal approach to bankruptcy remands embodied in § 1452(b). In bankruptcy cases, the bankruptcy court is authorized to abstain from hearing a matter, even if the matter has been properly removed. Such abstention is authorized, for example, in the interest of comity with state courts or respect for state law.[19] A liberal interpretation of time requirements as to remand provides bankruptcy courts added flexibility in determining whether remand, for reasons of abstention or otherwise, is appropriate. In view of the need for additional flexibility in dealing with remand issues in the bankruptcy court, Federal Rule of Bankruptcy Procedure 9027(d) provides a procedure for remand motions, but does not impose a time limit. We hold, as did the Bankruptcy Court, that the motion to remand was timely filed.

---

[17]  516 U.S. at 131-32, 116 S.Ct. at 499.

[18]  *Accord Billington v. Winograde (In re Hotel Mt. Lassen, Inc.)*, 207 B.R. 935, 939 (Bankr. E.D. Cal. 1997).

[19]  28 U.S.C. § 1334(c)(1).

3. Abstention

Cargill asserts that the Minnesota Lawsuit is a dispute involving state contract law and that it is not a core proceeding, and, therefore, the Minnesota Bankruptcy Court was required to abstain and remand the matter to the State Court.

The federal district court's subject matter jurisdiction over bankruptcy matters is set forth in 28 U.S.C. § 1334.[20] District courts refer bankruptcy proceedings to the bankruptcy judges of their district pursuant to 28 U.S.C. § 157(a).[21] Under that provision, district courts and their bankruptcy units have exclusive jurisdiction over cases under Title 11, and non-exclusive jurisdiction over proceedings arising in or 'related to' a case under Title 11.[22]

> Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings. Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related by the bankruptcy.[23]

28 U.S.C. § 1334(c)(2) sets forth the circumstances for "mandatory abstention," in which a federal court must abstain from hearing a case over which it has bankruptcy jurisdiction:

---

[20] *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir. 1995).

[21] *Id.*

[22] *Id.* (citing 28 U.S.C. § 157(a), (b)).

[23] *Id.* (citations omitted).

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[24]

Thus, if the Minnesota Lawsuit is not a core proceeding, *i.e.,* a cause of action "arising under" or "arising in" the New York Bankruptcy Cases, then the Minnesota Bankruptcy Court was required to abstain and remand the case to the Minnesota State Court.

Cargill asserts here that the causes of action it asserts in the Minnesota Lawsuit are state law causes of action and do not "arise under" or "arise in" the Bankruptcy Cases.

> The phrase "arising under" applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy. The phrase 'arising in' generally refers to matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed. A nonexhaustive list of core proceedings is found in 28 U.S.C. § 157(b)(2).[25]

The sale of a debtor's assets is a specifically-enumerated core proceeding.[26] Hence, the New York Bankruptcy Court's Man Sale Order, the Refco LLC Sale Order, and the

---

[24] 11 U.S.C. § 1334(c)(2).

[25] *In re Williams*, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001).

[26] 28 U.S.C. § 157(b)(2)(N).

Order overruling Cargill's objection to the transfer, in which the Court found that Exclusivity Agreement was validly assigned to Man, are all core.

Since "the enforcement of orders resulting from core proceedings are themselves considered core proceedings,"[27] a determination as to whether Man is entitled to be treated as a party to the Exclusivity Agreement, which determination flows from the New York Bankruptcy Court's Orders regarding the assignment of the Exclusivity Agreement to Man, is also core.

Cargill says it does not seek to raise in the Minnesota Lawsuit the same issues pending in the New York appeal, but, instead, intends to argue that Man did not have the authority to unilaterally withhold Cargill's funds, apparently regardless of whether Man has rights under the Exclusivity Agreement. To the contrary, however, Cargill's Complaint in the Minnesota Lawsuit patently raises issues that are pending in the appeal of the New York Bankruptcy Court's decision.

Specifically, Cargill asserts in its Complaint that Man did not have the right to withhold the funds when Cargill moved its accounts because Man "is not a party to," "has not been assigned any rights pursuant to," "is not a third-party beneficiary of," and has no rights under" the Exclusivity Agreement.[28] These are precisely the same issues decided by the New York Bankruptcy Court, which decided that the Exclusivity Agreement was validly assigned to Man: if the Exclusivity Agreement was validly assigned to Man, then Man is a party to, and has rights under, it.

---

[27] *In re Williams*, 256 B.R. at 892. *See also In re Eveleth Mines, L.L.C.*, 318 B.R. 682, 687 (B.A.P. 8th Cir. 2004) (holding that if the bankruptcy court has jurisdiction to enter an order, it must also have jurisdiction to interpret and enforce that order).

[28] Complaint at p. 1; App. at 11.

Clearly, Cargill is taking a contrary position in the Minnesota Lawsuit, and since the outcome there could undercut the decision by the New York Bankruptcy Court in a core proceeding, the issues raised in the Minnesota Lawsuit are also core. Consequently, the Minnesota Bankruptcy Court was not required to abstain and remand the matter to the State Court under § 1334(c)(2).

Alternatively, Cargill asserts it was appropriate for the Minnesota Bankruptcy Court to abstain under § 1334's "discretionary abstention" provision. That section provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[29]

The courts have developed a number of factors that may be considered in determining whether abstention is appropriate.[30] However, the overriding issue here, weighing

---

[29] 28 U.S.C. § 1334(c)(1).

[30] *In re Williams*, 256 B.R. at 894 (listing the factors considered by the courts: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted 'core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden [on] the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties).

against even discretionary abstention, is the fact that the pending New York litigation involves many of the same issues asserted by Cargill here, and remanding this action to the Minnesota State Court could well produce inconsistent results.

Arguably, Cargill is correct that the narrow issue of whether Man had the right to withhold the funds under the terms of the Exclusivity Agreement is a state law contract issue which should be heard by the State Court. However, the issue of whether Man has rights under the Exclusivity Agreement is the issue that was raised by Cargill in the Complaint it filed in the Minnesota Lawsuit; that issue must ultimately be decided in the New York appeal first. If the outcome of that litigation necessitates the interpretation of the Exclusivity Agreement's terms, then it might be appropriate for the New York Court at that time to remand the matter to the State Court under 28 U.S.C. § 1452, which we have already said has no time limits. Until the appeal is resolved, however, such a remand is not proper because it could result in contradictory judgments involving a core matter.

## CONCLUSION

For the foregoing reasons, the Order of the United States Bankruptcy Court for the District of Minnesota entered on March 15, 2006, remanding this removed action to the District Court of the State of Minnesota for Hennepin County (the "State Court"), is reversed. This matter is remanded to the Bankruptcy Court with instructions to transfer this action to the United States Bankruptcy Court for the Southern District of New York.

_____

14